**Jessie Neal PENIX, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 45285.

Court of Criminal Appeals of Texas.

Nov. 22, 1972.

Rehearing Denied Jan. 10, 1973.

James W. Lee, III, Dallas, for appellant.

Henry Wade, Dist. Atty., and Catharine T. Hill, Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

OPINION

ODOM, Judge.

This appeal is from a conviction for the offense of unlawful possession of a dangerous drug, to-wit: barbiturate and amphetamine. Punishment was assessed by the jury at one year in jail.

The record reflects that Officers Nolen and Henderson, of the Dallas Police Department, were on patrol in that city on September 26, 1970. At approximately 1:30 A.M. they observed an automobile driven by a woman with a male passenger (the appellant) traveling slowly in the direction of their patrol car; suddenly the automobile turned into the parking lot of a lounge; the lounge was darkened and apparently closed; no other traffic was in the vicinity, and it was raining. The area was known by the officers as a high crime rate area and their suspicions were aroused.

The officers kept the car under observation and followed it into an alleyway behind the lounge. They stopped their patrol car approximately ten to fifteen feet behind the automobile and, by the light from their headlights, they saw appellant standing outside the open door on the passenger's side of the automobile and observed him drop a package onto the ground. They retrieved the package, which was a potato chip bag containing 28 cellophane bags of 28 pills each. The evidence shows that the pills contain 32.7 milligrams of barbiturate and 5 milligrams of amphetamine per tablet. The potato chip bag was not retained by the officers as it "wasn't any good—it was all torn up and wet."

Appellant, testifying in his own behalf, stated that he was thirty-eight years old, married and has four children and two stepchildren; that on the night in question he met Joyce Cranfill at a "Club" and they danced and drank some beer. They left the club in her car and were on their way to join some friends when they stopped; that the reason for stopping at that location was for him to relieve himself; that after he got out of the car he threw a beer can down. He denied knowledge and possession of any pills, and stated that he did not throw any such parcel on the ground. Joyce Cranfill did not testify at the trial.

Three grounds of error are urged by appellant, the first being that the use of his 1960 prior conviction for cattle theft was improper as being too remote.

On cross-examination the state sought to impeach appellant by asking him about a prior conviction for cattle theft in 1960. An objection to the introduction of such testimony on the grounds of remoteness was overruled. It was then developed that appellant was convicted in 1960 and was discharged from the Texas Department of Corrections on July 18, 1961. The instant trial was conducted on the 1st day of April, 1971. Therefore, some nine years, eight and one-half months elapsed from the date of appellant's release from prison to the date of the trial.

Appellant relies upon Hughes v. State, 168 Tex.Cr.R. 637, 331 S.W.2d 216; Shipp v. State, 104 Tex.Cr.R. 185, 283 S.W. 520; and Winn v. State, 54 Tex.Cr.R. 538, 113 S.W. 918, for the proposition that his prior conviction was too remote for impeachment purposes.

In Hughes v. State, supra, the defendant was cross-examined at his 1959 trial regarding a 1951 conviction for selling whiskey. In reversing the conviction, the court relied on Davidson v. State, 161 Tex.Cr.R. 486, 278 S.W.2d 861, wherein it was stated, at page 863:

"Prior convictions for violation of the liquor law are also inadmissible when offered for impeachment purposes, since such offenses are misdemeanors and do not involve moral turpitude. Branch's Ann.P.C., p. 103, Sec. 169; Nattali v. State, 151 Tex.Cr.R. 626, 209 S.W.2d 930; Andrews v. State, 154 Tex.Cr.R. 392, 228 S.W.2d 173."

In Shipp v. State, supra, the question of remoteness was discussed at some length and the observation was made that this court,

". . . has never . . . undertaken to fix arbitrarily and absolutely a space of time which would characterize such testimony as too remote . . ."

and stated further that "the nature of things precludes such a declaration. The receipt of such testimony should primarily be determined by the trial judge . . . ." Therein it was held that a nine year old conviction was *not* too remote under the facts presented.

Winn v. State, supra, held a *fourteen* year old conviction too remote, in the absence of intervening wrongdoing.

In 62 Tex.Jur.2d, Witnesses, Section 273, p. 248, it is written:

"The question of remoteness is usually to be determined in the light of the particular facts of each case, especially regarding subsequent conduct of convict; the youthfulness of the witness when he committed the offense is also an important consideration. In any event, the question is one addressed largely to the discretion of the trial court, and no hard and fast rule or period of time may be fixed. It has, on the other hand, been held that where there is evidence showing a lack of reformation, or in any event the subsequent conviction of another felony, the prior conviction is not deemed subject to the objection of remoteness.

"It is further held that, in determining whether the conviction is too remote to be available for impeachment, time is considered to run from the time of release from prison."

Even though this court has never "undertaken to fix arbitrarily and absolutely a space of time which would characterize such testimony as too remote", there seems to have developed a rule of thumb or guideline that such should not be admitted if the time lapse exceeds ten years. See, e. g., 62 Tex.Jur.2d, Witnesses, Section 340, at page 381, where it is written that:

"Nevertheless, the tendency of many decisions is to hold that an interval of ten years, counting from the time of release from jail if the defendant served a term of imprisonment, renders the previous conviction unavailable for impeachment, . . . ."

See, e. g., Livingston v. State, Tex.Cr. App., 421 S.W.2d 108; Haney v. State, 152 Tex.Cr.R. 63, 211 S.W.2d 215.

On the other hand, the tendency has been that the trial court's discretion to admit such conviction has generally been upheld if the period of time was less than ten years. See, e. g., Bustillos v. State, Tex. Cr.App., 464 S.W.2d 118; King v. State, Tex.Cr.App., 425 S.W.2d 356; Courtney v. State, Tex.Cr.App., 424 S.W.2d 440; Taylor v. State, 163 Tex.Cr.R. 42, 288 S.W.2d 516; Gill v. State, 147 Tex.Cr.R. 392, 181 S.W.2d 276; Shipp v. State, supra.

In Gill v. State, supra, the conviction was reversed because the defendant was not permitted to prove prior convictions of the state's witness ranging from seven to eighteen years old.

■ We hold that the trial court did not abuse its discretion by the admission of the prior conviction for impeachment under the facts presented in the case at bar.

The first ground of error is overruled.

Ground of error number two complains of the admission of an exhibit into evidence because a portion thereof "was deliberately suppressed by the State."

■ State's Exhibit Number Two consisted of the package of contraband retrieved on the scene, allegedly thrown down by the appellant. The potato chip bag was not retained and therefore was not a part of the exhibit. Appellant contends that said potato chip bag was "deliberately suppressed."

The officer testified that the potato chip bag was wet and torn up and he "didn't consider it evidence," so he threw it away.

The prosecuting attorney testified and denied knowledge concerning the bag beyond that heard from the witness stand. She further testified that she had no information and had no access to information that would be useful to the appellant either as to his innocence or in mitigation.

We find no deliberate suppression by the state. Further, no bad faith on the part of the prosecution is shown and nothing is shown that would affect the disposition of the case; i. e., there is no showing that appellant was deprived of a fair trial. See Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737; Ex parte Cherry, Tex.Cr.App., 456 S.W.2d 949. See also, Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.

Ground of error number two is overruled.

Finally, ground of error number three asserts that State's Exhibit No. 2 was not properly identified; contending the twenty-eight bags containing the pills were not all initialed by the officers.

The evidence shows that the officers initialed "several" of the bags and then placed them all in an envelope. The chain of custody of the envelope, containing all of the bags, was shown; hence, no reversible error is shown. Cazares v. State, Tex.Cr.App., 488 S.W.2d 110 (11–8–72).

Ground of error number three is overruled.

We note that the jury verdict assessed punishment herein at one year in jail and the judgment and sentence show 365 days. Therefore, such judgment and sentence are ordered reformed to read *"one year in jail."*

As reformed, the judgment is affirmed.